UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANNDRIA ANDERSON, | CASE NO. 2:25-cv-02420-JHC |
| Plaintiff, | ORDER |
| v. | |
| SEQUOYAH ELECTRIC LLC, | |
| Defendant. | |

**I**
**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion to Remand.  Dkt. # 12.  The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law.  Being fully advised, the Court GRANTS the Motion.

**II**
**BACKGROUND**

Plaintiff Anndria Anderson originally filed this class action on behalf of herself and other current and former employees of Defendant Sequoyah Electric, LLC in the Superior Court of Washington for King County.  *See* Dkt. # 1-1.  The original complaint (the Complaint) asserted nine claims against Defendant: (1) Failure to Provide Rest Periods (RCW 49.12.020); (2) Failure to Provide Meal Periods (RCW 49.12.020); (3) Failure to Pay Overtime Wages (RCW

ORDER - 1

49.46.130); (4) Payment of Wages Less Than Entitled (RCW 49.46.090); (5) Failure to Accrue and Allow Use of Sick Leave (RCW 49.46.210); (6) Unlawful Deductions and Rebates (RCW 49.52.060); (7) Failure to Pay All Wages Due at Termination (RCW 49.48.010); (8) Willful Refusal to Pay Wages (RCW 49.52.050); and (9) Failure to Pay All Compensation Owed (SMC 14.20.020). *Id*. at 10–18.

Defendant removed the case to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1331. Dkt. # 1. The Removal Notice states: the action is removed "on the grounds that the Labor Management Relations Act [LMRA], § 301, preempts and supplants two of [Plaintiff's] claims" and "this Court may exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a)." *Id*. at 1. Soon after, Defendant moved to dismiss the Complaint, arguing that: (1) Plaintiff's claims under RCW 49.12.020 and RCW 49.48.010 fail as a matter of law; (2) Plaintiff's claims are preempted by § 301 of the LMRA; and (3) the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Dkt. # 6.

Plaintiff responded to Defendant's Motion to Dismiss (Dkt. # 6) by filing the First Amended Complaint (FAC). Dkt. # 10. The FAC asserts six claims against Defendant: (1) Failure to Pay Overtime Wages (RCW 49.46.130); (2) Payment of Wages Less Than Entitled (RCW 49.46.090); (3) Failure to Accrue and Allow Use of Sick Leave (RCW 49.46.210); (4) Unlawful Deductions and Rebates (RCW 49.52.060); (5) Willful Refusal to Pay Wages (RCW 49.52.050); and (6) Failure to Pay All Compensation Owed (SMC 14.20.020). *Id*. at 10–14. The FAC does not assert any claims under the parties' collective bargaining agreement (the CBA), nor even mention that the parties had a CBA.[1] *See generally id*.

---

[1] Despite failing to mention the CBA in the FAC, Plaintiff's other filings both explicitly and implicitly acknowledge the existence of a CBA between the parties. *See generally* Dkt. ## 12 & 16.

ORDER - 2

Plaintiff now moves to remand the case to King County Superior Court pursuant to 28 U.S.C. § 1447.  Dkt. # 12.

### III
### DISCUSSION

A.    Legal Standards

    1.    Removal Jurisdiction

"Federal courts are courts of limited jurisdiction."  *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991).  "Accordingly, a federal district court may only hear cases for which there is subject matter jurisdiction."  *Palm Desert Nat'l Bank v. Fid. Nat'l Title Ins. Co.*, 2013 WL 12132063, at *3 (C.D. Cal. Dec. 26, 2013) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006).  When a case is removed to federal court based on federal-question jurisdiction, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 11 n.9 (1983) ("The well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as to their removal jurisdiction.").

In the Ninth Circuit, there is a "'strong presumption' against removal jurisdiction[.]" *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).  This means that "'the defendant always has the burden of establishing that removal is proper,'" and a district court must resolve "all ambiguity in favor of remand to state court."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *id.*); *see also Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) ("[R]emoval statutes should be construed narrowly in favor of remand[.]").  "If the district court determines, after removal, it lacks subject matter jurisdiction, it must remand the case back to state court."  *Floyd v. Photon Infotech Inc.*, 2025 WL 3442736, at

ORDER - 3

*2 (W.D. Wash. Dec. 1, 2025) (citing 28 U.S.C. § 1447(c)).  This is true even if the plaintiff files an amended complaint after the case is removed to federal court: if the plaintiff files an amended complaint and such complaint "eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves."  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025).

A court can properly assert supplemental jurisdiction "over state law causes of action where the relationship between the federal and state claims is such that they 'form part of the same case or controversy under Article III of the United States Constitution.'"  *Goulatte v. CitiMortgage, Inc.*, 2012 WL 12888846, at *2 (C.D. Cal. July 2, 2012) (quoting 28 U.S.C. § 1367(a)).  A district court may also invoke supplemental jurisdiction to remove state-law claims to federal court, but "only when there is 'a hook of original jurisdiction on which to hang it.'"  *Pioneers Mem'l Healthcare Dist. v. Imperial Valley Healthcare Dist.*, 745 F. Supp. 3d 1088, 1105 (S.D. Cal. 2024) (quoting *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001)); *see also Andy Invs. LLC v. Potter*, 2025 WL 1155862, at *3 (W.D. Wash. Apr. 21, 2025) ("Without removal jurisdiction, the Court cannot have supplemental jurisdiction.").

If a federal court initially has jurisdiction over an action but, after removal and amendments to the complaint, it loses its federal-question jurisdiction, the court's supplemental jurisdiction over any related state-law claims is also extinguished.  *See Royal Canin*, 604 U.S. at 30.  In such a case, the federal court's jurisdiction over the entire action "dissolves," and the court "must remand the case to the state court where it started."  *Id*. at 39; *see also id*. at 43–44.

2.    Complete Preemption Doctrine

Although the general rule is that "a case may not be removed to federal court on the basis of a federal defense," the complete preemption doctrine provides an exception to this general rule.  *Balcorta*, 208 F.3d at 1106 (quoting *Franchise Tax*, 463 U.S. at 14).  Per the Supreme

Court, complete preemption applies when the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  In such a situation, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim," thereby giving a court federal-question jurisdiction over that claim. *Id*.

Courts regularly apply the complete preemption doctrine to state-law claims that implicate § 301 of the LMRA.  *See Balcorta*, 208 F.3d at 1107–08 (collecting cases).  But not every case involving a labor-management agreement is automatically subject to the complete preemption doctrine.  *Id*.  The Ninth Circuit has articulated a two-step test for determining when a claim is or is not preempted by § 301.  *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007).

This test—the *Burnside* test—requires a court to first determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA."  *Id*. at 1059; *see also Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) ("The essential inquiry is this: Does the claim seek 'purely to vindicate a right or duty created by the CBA itself[?]'" (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018)). In making this determination, courts are instructed "to consider the legal character of a claim, as independent of rights under the collective-bargaining agreement and not whether a grievance arising from precisely the same set of facts could be pursued." *Burnside*, 491 F.3d at 1060 (cleaned up and citations omitted).  Courts are likewise instructed to reject claims where "reliance on the CBA" appears only "as an aspect of a defense[.]" *Id*.  "If the right exists solely

ORDER - 5

as a result of the CBA, then the claim is preempted, and [the court's] analysis ends there." *Id*. at 1059. But if the right "exists independently of the CBA," the court will proceed to step two. *Id*.

At step two, a court must determine whether the claim is "'substantially dependent' on the terms of a CBA." *Id*. at 1060 (quoting *Caterpillar*, 482 U.S. at 394). To do so, courts are instructed to consider "whether the claim can be resolved by looking to versus interpreting the CBA." *Id*. (cleaned up and citations omitted). "At this second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Curtis*, 913 F.3d at 1153 (internal quotation marks and citations omitted); *see also Schurke*, 898 F.3d at 921 ("'Interpretation' is construed narrowly; it means something more than 'consider,' 'refer to,' or 'apply." (quoting *Balcorta*, 208 F.3d at 1108)). Thus, "a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis*, 913 F.3d at 1153; *see also Burnside*, 491 F.3d at 1060 ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." (quoting *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)). Likewise, state-law claims that merely require the court to check whether the CBA contains a waiver, identify an employee's pay rate, or reference CBA provisions regarding compensation for compulsory travel time, banked vacation days, or other special circumstances, do not create complete preemption at *Burnside* step two. *See McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1013 (9th Cir. 2018); *Schurke*, 898 F.3d at 927.

Absent complete preemption under the LMRA (or some other exception not at issue here), a pure state-law claim brought by an employee against their employer cannot give rise to federal-question jurisdiction. Accordingly, if a case is removed to federal court based on such a claim, the district court lacks jurisdiction over the action and must remand the case to state court. *See, e.g.*, *Burnside*, 491 F.3d at 1074 (directing the district court to remand the case to state court

ORDER - 6

because the plaintiff's state-law claims were not preempted by § 301); *McCray*, 902 F.3d at 1014 (same).

B.    Analysis

Plaintiff contends that the Court should remand her case for lack of jurisdiction. *See generally* Dkt. # 12. Specifically, Plaintiff argues that federal jurisdiction is lacking because: (1) a federal question does not appear on the face of the operative complaint, i.e., the FAC; (2) the complete preemption doctrine does not apply, as all of Plaintiff's claims are premised solely on state law and do not require any interpretation of the CBA; and (3) absent federal-question jurisdiction, the Court cannot assert supplemental jurisdiction over Plaintiff's other state-law claims. *See id.* at 5, 7–10.

Defendant does not argue that a federal question appears on the face of the FAC or that the Court can exercise supplemental jurisdiction if it determines that it lacks federal-question jurisdiction over any of Plaintiff's claims. *See generally* Dkt. # 16. Instead, Defendant argues that despite Plaintiff's amendments, the Court retains jurisdiction over the action because Plaintiff's amended state-law claims for overtime and payment of wages in the FAC remain preempted under § 301 of the LMRA. *Id.* at 5, 14–16. Defendant thus argues that remand is inappropriate, as the Court has federal-question jurisdiction over Counts I and II in the FAC (and supplemental jurisdiction over all the other claims). *Id.* at 9.

Based on the parties' arguments, then, the only question for the Court to resolve is whether any of Plaintiff's state-law claims, as alleged in the FAC, are subject to complete preemption under *Burnside*. For the reasons below, the Court concludes that none of Plaintiff's claims in the FAC are completely preempted, thereby depriving this Court of jurisdiction over the action.

ORDER - 7

1.      Do Plaintiff's claims exist independently of the CBA?

The FAC asserts six claims against Defendant: (1) Failure to Pay Overtime Wages (RCW 49.46.130); (2) Payment of Wages Less Than Entitled (RCW 49.46.090); (3) Failure to Accrue and Allow Use of Sick Leave (RCW 49.46.210); (4) Unlawful Deductions and Rebates (RCW 49.52.060); (5) Willful Refusal to Pay Wages (RCW 49.52.050); and (6) Failure to Pay All Compensation Owed (SMC 14.20.020).  Dkt. # 10 at 10–14.  As the citations in these claims indicate, each of these claims is based on a specific state law[2] that affords employees with certain rights against their employer, irrespective of whether there is a CBA.  The "legal character" of Plaintiff's claims thus suggests that Plaintiff is asserting claims under Washington state law "independently" of her rights under the CBA.  *See Burnside*, 491 F.3d at 1060.

This conclusion is also bolstered by the actual allegations in the FAC.  The Court finds nothing in the FAC that suggests that Plaintiff seeks to "vindicate a right or duty created by the CBA[.]"  *Curtis*, 913 F.3d at 1152 (quoting *Schurke*, 898 F.3d at 921).  Although Defendant contends that Counts I and II in the FAC—Failure to Pay Overtime Wages and Payment of Wages Less Than Entitled—"arise" from the CBA and thus are preempted under *Burnside* step one, Defendant fails to explain how such claims "arise" under the CBA rather than state law.  *See* Dkt. # 16 at 9, 14.  In fact, the Response explicitly acknowledges that Plaintiff is seeking compensation for missed overtime at the statutory rate, not the CBA rate.  *Id.* at 14.  While Defendant tries to characterize this as an "odd" demand that somehow proves their argument, *see id.*, the Court finds the opposite to be true: because Plaintiff is not seeking compensation at the

---

[2] RCW 49.46.130 sets forth the minimum rate of compensation for employment in excess of a forty-hour workweek; RCW 49.46.090 explains an employer's liability for paying employees less than they are entitled to; RCW 49.46.210 governs paid sick leave; RCW 49.52.060 concerns authorized withholdings; RCW 49.52.050 provides penalties for employers who willfully deprive employees of wages; and SMC 14.20.020 proscribes compensation requirements for employees.

ORDER - 8

higher, CBA rate and is instead seeking compensation at the lower, statutory rate, the fair inference is that Plaintiff is seeking to vindicate "right[s] conferred upon [her] by virtue of state law, not by [the] CBA." *Burnside*, 491 F.3d at 1059.

Accordingly, the Court concludes that Plaintiff's six claims for relief, including Counts I and II in the FAC, "exist[ ] independently of the CBA." *Id.* It thus finds that Plaintiff's claims are not preempted at step one, and so it must proceed to *Burnside* step two.

2.    Do Plaintiff's claims substantially depend on the terms of the CBA?

All six of Plaintiff's claims essentially raise the same question: did Defendant deprive Plaintiff (and other class members) of wages, pay, or other benefits to which they were statutorily entitled to under Washington law? To answer this question, a court must determine: (1) what wages, pay, and other benefits were Plaintiff and other employees entitled to under each statute; (2) what wages, pay, or other benefits did Plaintiff and other class members actually receive from Defendant during the class period; and (3) is there a difference between the two. None of these questions (and the additional sub-questions required for their resolution) appear to raise any "questions about the scope, meaning, or application of the CBA[,]" nor require a court to "interpret" any of the CBA's terms. *See Curtis*, 913 F.3d at 1153; *see also Schurke*, 898 F.3d at 921.

Defendant tries to avoid this conclusion by arguing that Plaintiff's overtime and minimum wage claims will require the court to determine Plaintiff's hourly rate of pay, which in turn will require "a complex analysis" and "interpretation" of the CBA's terms. Dkt. # 16 at 14–15. But the Court does not find that resolution of Plaintiff's claims will require "interpretation" under *Burnside*, i.e., resolution of an "active dispute over the meaning of contract terms" or "something more" than mere consideration, reference to, or application of the CBA. *See Curtis*, 913 F.3d at 1153; *Schurke*, 898 F.3d at 921. Plaintiff does not dispute the meaning or

ORDER - 9

application of any term in the FAC.  *See* Dkt. # 10.  Likewise, the fact that Plaintiff has not offered any "elaboration of what she thinks those terms are" or how they apply is irrelevant, *see* Dkt. # 16 at 16, as Plaintiff is alleging that she was improperly compensated under Washington state law, *not* that Defendant has violated her rights under the CBA.[3]  Courts have also found that referencing a CBA to identify an employee's pay rate or calculate damages based on undisputed wage terms does not convert a state-law claim for missing compensation into a preempted claim under § 301 of the LMRA.  *See McCray*, 902 F.3d at 1013; *see also Schurke*, 898 F.3d at 927.  The Court thus finds that Plaintiff's claims for overtime and minimum wage can be resolved by "looking to," rather than "interpreting," the CBA.

Accordingly, the Court does not find that any of the FAC's claims "substantially depend[ ] on the terms of [the] CBA."  *Burnside*, 491 F.3d at 1060.  It thus concludes that none of Plaintiff's claims are completely preempted under § 301, thereby depriving this Court of federal-question jurisdiction.  As Defendant offers no other basis for this Court to assert federal-question or supplemental jurisdiction over any claim in the FAC, the Court concludes that it lacks jurisdiction and must remand this case to the state court in which it was originally filed.  *See Burnside*, 491 F.3d at 1074; *McCray*, 902 F.3d at 1014.

**IV**
**CONCLUSION**

For these reasons, the Court GRANTS Plaintiff's Motion to Remand (Dkt. # 12) and ORDERS this case remanded to the Superior Court of Washington for King County.  The Court also STRIKES Defendant's Motion to Dismiss (Dkt. # 20) as moot.

---

[3] Defendant's argument that Plaintiff did not comply with the CBA's grievance procedure, *see* Dkt. # 16 at 16, is also insufficient to create federal jurisdiction.  Any argument that Plaintiff failed to comply with the CBA's procedures before filing suit amounts to a federal defense, not a federal claim.  And checking to see whether a CBA contains a grievance procedure is not "interpretation" under *Burnside*.

ORDER - 10

Dated this 6th day of February, 2026.

John H. Chun
United States District Judge

ORDER - 11